# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 06-20951-CIV-HUCK/BANDSTRA

ILLINOIS UNION INSURANCE
COMPANY,

      Plaintiff,

vs.

CLIFF BERRY, INC., JEFFREY SMITH,
MITCHELL OCEGURA, and CLIFF BERRY, II.,

      Defendants.

_____/

### ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

_____THIS MATTER is before the Court upon Plaintiff's Motion for Final Summary Judgment [D.E. #36], filed on October 5, 2006, and Defendants' Motion for Partial Summary Judgment [D.E. #39], filed on October 11, 2006.  Plaintiff, Illinois Union Insurance Company ("Illinois Union" or "Insurer"), brought this action seeking a declaratory judgment that its insurance policy does not cover the Defendants' criminal conduct or the costs associated with defending criminal charges.  On the other hand, Defendants, insureds of Illinois Union, contend that the underlying claims are covered by the express terms of the policy.  Because Illinois Union does have a duty to cover the costs, charges, and expenses incurred by the Defendants in their defense against underlying criminal claims, the Court grants Defendants' Motion for Partial Summary Judgment.  Because there is no other potential  indemnification on the basis of the underlying criminal claim, the Court grants in part Plaintiff's Motion for Final Summary Judgment.

## I.      Factual and Procedural Background

      Defendant, Cliff Berry, Inc., is a Florida corporation with its principal place of business in Fort

Lauderdale, Florida.  Defendants, Cliff Berry II ("Berry"), Jeffrey Smith ("Smith"), and Mitchell Ocegura ("Ocegura"), are directors and officers of Cliff Berry, Inc.[1]  Illinois Union, an Illinois corporation with its principal place of business in Chicago, Illinois, issued a commercial liability insurance policy, Number BM120011286 (the "policy"), to Cliff Berry, Inc., with effective dates from December 31, 2003 through December 31, 2004.  The policy contained Directors and Officers coverage with liability limits of $1,000,000 in the aggregate.  On or about August 10, 2004, the State of Florida filed an information against Cliff Berry, Inc. and Smith.  A superseding information against those same Defendants was filed on August 5, 2005.  Finally, this was supplemented by a second superseding information against Defendants Cliff Berry, Inc., Smith, and Berry (collectively, "Defendants" or "Insureds")[2] on December 29, 2005.  No charges have been filed against Ocegura. The charges, brought in the Circuit Court of the Eleventh Judicial Circuit in Miami-Dade County, Florida, allege various counts of racketeering, organized fraud, grand theft, money laundering, and evidence tampering.  *See* Second Superseding Information, Def. Ex. C**.**  The criminal conspiracy was alleged to have begun in January 2000 and continuing through March 2003.  *Id.*  In addition to criminal fines and potential imprisonment, the underlying information seeks restitutionary relief from the Defendants.  Illinois Union subsequently brought this action, requesting that the Court declare that there is no coverage for the Defendants under the policy for the underlying criminal activities.

---

[1] None of the pleadings clearly specify the positions held by Berry, Smith, and Ocegura. Based on the lack of any objection by Illinois Union, the Court assumes that the three individual Defendants are directors and/or officers of Cliff Berry, Inc. who are covered under the policy. Moreover, the second superseding criminal information identifies Berry as "a director and principal of Cliff Berry, Inc." and Smith as "director of Environmental Services for Cliff Berry, Inc."

[2] Although the policy addresses the treatment of Directors and Officers separately from the Company, there is no relevant difference for the purposes of coverage in this case.  Accordingly, the coverage of the policy will be determined with respect to the Defendants collectively.

The policy itself obligates Illinois Union to pay on behalf of the Directors, Officers, and Company for "any Loss resulting from any Claim first made against them during the policy period for a Wrongful Act."  Directors & Officers And Company Coverage ("D & O") § A(1) and (2).  A Claim is defined in the policy as "(a) any written or oral demand for damages , or other relief against any of the Insureds, and (b) any judicial, administrative or arbitration proceeding, initiated against any of the Insureds in which they may be subjected to a binding adjudication of liability for damages or other relief, including any appeal therefrom."  D & O § (B)(2).  Loss is then defined as "damages, settlements and Costs, Charges, and Expenses incurred by any of the Directors and Officers under Insuring Clauses 1 and 2, and the Company under Clause 3."  D & O § (B)(7).  Excluded from this definition, however, are "taxes, criminal or civil fines or penalties imposed by law."  D & O § (B)(7)(b).  Finally, a "Wrongful Act" is defined as "any actual or alleged error, omission, misleading statement, neglect, breach of duty, or act" by the Directors or Officers in their official capacity, or by the Company.  D & O (B)(9).  The policy also states that the Insurer shall not be liable to make any payment in connection with any Claim "brought about or contributed by: (I) any dishonest, fraudulent or criminal act or omission by any of the Insureds . . . as determined by a judgment or other final adjudication."  D & O § (C)(1)(g).

Illinois Union contends that, because the underlying claim alleges criminal penalties which are not covered, the claim is excluded from the policy.  The Defendants assert that the exclusion does not apply and that Illinois Union maintains a duty to defend the Defendants against the criminal allegations.

## II.    Standard of Review

Summary judgment is appropriate if the pleadings, depositions, and affidavits show that there

is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56©; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  An issue of fact is "material" if it is a legal element of the claim under applicable substantive law which might affect the outcome of the case.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997).  An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party.  *Allen,* 121 F.3d at 646.  On a motion for summary judgment, the Court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the non-moving party, and determine whether that evidence could reasonably sustain a jury verdict.  *Celotex*, 477 U.S. at 322-23; *Allen,* 121 F.3d at 646.

While the burden on the movant is great, the opposing party has a duty to present affirmative evidence in order to defeat a properly supported motion for summary judgment.  *Anderson*, 477 U.S. at 252.  A mere "scintilla" of evidence in favor of the non-moving party, or evidence that is merely colorable or not significantly probative is not enough.  *Id.*; *see also Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996) (conclusory allegations and conjecture cannot be the basis for denying summary judgment).

"Because the duty of [an insurer] to pay defense costs rests upon the legal effect of the provisions of an insurance contract, the interpretation of the contract is a matter of law for the Court to determine, and is therefore appropriate for summary judgment."  *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Brown*, 787 F. Supp. 1424, 1427 (S.D. Fla. 1991) (citing *Gulf Tampa Drydock Co. v. Great Atlantic Ins. Co.*, 757 F.2d 1172, 1174 (11th Cir. 1985)).

III.   **Discussion**

A.   **Standing**

Article III, section two of the Constitution limits the exercise of judicial power to "cases" and "controversies."  Illinois Union has brought this action pursuant to 28 U.S.C. § 2201, which permits the Court to declare the rights and other legal relationships of any interested party seeking such a declaration, in a case of actual controversy within its jurisdiction.  "The declaratory judgment act, in its reference to 'cases of actual controversy' manifestly has regard to the constitutional provision and is operative only in respect to controversies which are such in the constitutional sense."  *Provident Life & Acc. Ins. Co. v. Transamerica-Occidental Life Ins. Co.*, 850 F.2d 1489, 1490-91 (11th Cir. 1988) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-40 (1937)).  Thus, Illinois Union must still show that it has an actual claim or controversy against the Defendants.  "The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."  *Id.* (quoting *Aetna*, 300 U.S. at 240-41).

Illinois Union has clearly met this standard with respect to Cliff Berry, Inc., Smith, and Berry. They have been charged in a criminal information and seek to recover payment under the insurance policy.  Ocegura is a different matter, however.  No criminal or civil charges have been filed against him.  Indeed, there has been no form of written or oral demand for damages against Ocegura that could be considered a Claim under the policy.  It is not enough that Ocegura may at some point have a claim brought against him that would trigger a dispute over his coverage.  Illinois Union must have an actual controversy with Ocegura in order to properly bring a declaratory action against him.

Because no such controversy exists, Illinois Union has not met the constitutional standing requirement with respect to Ocegura. Accordingly, Illinois Union's claim against Ocegura must be dismissed for lack of standing.

**B.     Duty to Defend**

The next issue that the Court must determine is whether the Illinois Union has a duty to defend the Defendants in the criminal action. Under Florida law, a court may issue a declaratory judgment as to an insurer's duty to defend and duty to indemnify. *Higgins v. State Farm Fire & Cas. Co.*, 894 So.2d 5, 9 (Fla. 2004). "It is well settled that an insurer's duty to defend its insured against a legal action arises when the complaint alleges facts that fairly and potentially bring the suit within policy coverage. The duty to defend must be determined from the allegations in the complaint." *Jones v. Florida Ins. Guar. Ass'n*, 908 So.2d 435, 442 (Fla. 2005) (internal citations omitted). "Florida recognizes a distinction between the duty to defend and the duty to indemnify."[3] *Sphinx Int'l, Inc. v. Nat'l Union Fire Ins. Co. Of Pittsburgh, PA*, 226 F. Supp. 2d 1326, 1339 (M.D. Fla. 2002). The Florida Supreme Court has found the former to be purely a statutory or contractual duty. *Allstate Ins. Co. v. RJT Enters., Inc.*, 692 So.2d 142, 145 (Fla. 1997); *see also Budget Rent A Car Systems, Inc. v. Taylor*, 626 So.2d 976, 978-79 (Fla. 4th Dist. Ct. App. 1993) ("duty to defend is purely contractual . . . if there is no duty to defend in the parties' contract, then there is no duty to defend"). There is no "duty to defend" provision in the Illinois Union policy and, therefore, Illinois Union does not owe Defendants such a duty.

However, Defendants, as they use the term "duty to defend" in their motions, seem to actually

---

[3] The parties agree that Florida substantive law applies in this diversity action. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938).

be seeking a form of indemnification, namely, the payment of legal expenses and costs in the course of their defense against the underlying criminal action.

### C.    Duty to Indemnify

Thus, the next issue before the Court is whether Illinois Union has a legal duty to indemnify the Defendants against the criminal claims that have been brought against them.  In interpreting the terms of the D & O policy, the Court will look to basic principles of Florida law governing the interpretation of insurance policies.  *Brown*, 787 F. Supp. at 1428.  "It is well-settled in Florida that (1) the language used in an insurance policy is interpreted based on its popular and usual significance, unless the context requires a different conclusion; and (2) that provisions which tend to limit or avoid liability are construed in favor of the insured and strictly construed against the insurer."  *Id.* (citing *Rouse v. Greyhound Rent-A-Car, Inc.*, 506 F.2d 410, 415 (5th Cir. 1975)); *see also Prudential Prop. & Cas. Ins. Co. v. Swindal*, 622 So.2d 467 (Fla. 1993).  "Florida law is equally well-settled that insuring or coverage clauses are construed in the broadest possible manner to effect the greatest extent of coverage."  *Westmoreland v. Lumbermens Mut. Cas. Co.*, 704 So.2d 176, 179 (Fla. 4th Dist. Ct. App. 1997) (citing *Hudson v. Prudential Prop. & Cas. Ins. Co.*, 450 So.2d 565, 568 (Fla. 2nd Dist. Ct. App. 1984) (insurance coverage must be construed broadly and its exclusions narrowly)).  "In contrast to insuring clauses, however, exclusionary clauses in liability insurance policies are always strictly construed."  *Id.* (citing *Demshar v. AAACon Auto Transport, Inc.*, 337 So.2d 963, 965 (Fla. 1976)).

Although Florida law states that the terms in insurance contracts are construed in accordance with the plain language of the policies, "[i]f the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and another limiting coverage, the insurance

policy is considered ambiguous." *Auto-Owners Ins. Co. v. Anderson*, 756 So.2d 29, 34 (Fla. 2000)

Any ambiguity should be resolved in favor of the Insured.  "The lack of a definition of an operative

term in a policy does not necessarily render the term ambiguous and in need of interpretation by the

courts." *State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So.2d 1072, 1076 (Fla. 1998).  Finally,

in construing the terms of the policy, the Court must read the policy as a whole, "endeavoring to give

every provision its full meaning and operative effect."  *Anderson*, 756 So.2d at 34.

Here, under the terms of the insurance policy, Illinois Union is required to "pay on behalf of

the Directors and Officers Loss resulting from any Claim first made against the Directors & Officers

during the Policy Period for a Wrongful Act."  D & O § (A)(1) and (2).  Accordingly, the Court must

first determine whether the underlying criminal information filed against the Defendants constitutes

a "claim" under the policy.  The policy defines a "claim" as "(a) any written or oral demand for

damages, or *other relief* against any of the Insureds, and (b) any judicial, administrative or arbitration

proceeding, initiated against any of the Insureds in which they may be subjected to a binding

adjudication of liability for damages or *other relief*, including any appeal therefrom."  D & O §(B)(2)

(emphasis added).  The term "relief" is not defined in the policy.  Black's Law Dictionary includes

a definition of "relief" as, "[t]he redress or benefit, esp. equitable in nature . . . that a party asks of

a court."  Black's Law Dictionary 1317 (8th ed. 2004); *see also* Webster's Third New Int'l

Dictionary 1918 (1981) (defining relief as "5(a): legal remedy or redress").  The criminal information

filed against the Defendants seeks to impose criminal penalties including fines, imprisonment, and

restitution.  Restitution, which in this case would be compensation to the victim of Defendants'

criminal conduct, doubtlessly constitutes a form of "relief." Fla. Stat. § 775.089(1)(a) states that "[i]n

addition to any punishment, the court shall order the defendant to make restitution to the victim for:

(1) Damage or loss caused directly or indirectly by the defendant's offense; and (2) Damage or loss related to the defendant's criminal episode."[4]   Restitution is a form of legal redress that is sought by the State of Florida in the underlying criminal matter.   Because restitutionary relief is considered "other relief" under the terms of the policy, the criminal information can be considered a Claim.

Next, the Court must consider whether a "loss" exists under the terms of the policy.   Loss is defined in the policy as "damages, settlements and Costs, Charges, and Expenses incurred by any of the Directors and Officers under Insuring Clauses 1 and 2, and the Company under Clause 3."   D & O § (B)(7).   Further, Costs, Charges and Expenses are defined in the policy as including "reasonable and necessary legal fees and expenses incurred by any of the Insureds in defense of any Claim."   D & O § (B)(4).   As noted earlier, the underlying criminal information filed against the Defendants does constitute a Claim.   Therefore, the legal expenses incurred in defending that claim are covered as a loss by the policy.[5]   Finally, a "Wrongful Act" is defined as "any actual or alleged error, omission, misleading statement, neglect, breach of duty, or act" by the Directors or Officers in their official capacity, or by the Company.   D & O (B)(9).   The acts that have been alleged in the second superseding information clearly constitute such wrongful acts.

In arguing that such defense costs are not covered by the policy, Illinois Union points to two

_____

[4] The relevant definition of restitution is: "compensation for loss; esp. full of partial compensation paid by a criminal to a victim, not awarded in a civil trial for tort, but ordered as part of a criminal sentence or as a condition of probation."   Black's Law Dictionary 1339 (8th ed. 2004).

[5] Illinois Union focuses much of its argument refuting the duty to defend on the fact that there is no potential recovery.   *See Underwriters at Lloyds London v. STD Enters., Inc.*, 395 F. Supp. 2d 1142, 1146 (M.D. Fla. 2005) ("the duty to defend ceases when it is shown that there is no potential for coverage, i.e., when there is no duty to indemnify").   Because the payment of legal expenses and costs does not arise out of the duty to defend, but rather as a form of indemnification, this argument does not avail Illinois Union's position.

specific exclusions.  First, in § (B)(7)(b), "taxes, criminal or civil fines or penalties imposed by law" are expressly excluded from the definition of Loss.  By allowing Defendants to recover defense costs and expenses, the Court does not offend this provision.  The policy expressly included reasonable legal fees and costs in its definition of Loss and did not remove them by the terms of the exclusion, which must be strictly construed.  Importantly, legal expenses and costs spent in defending a claim for a criminal fine are quite different from the criminal fine itself.  If Illinois Union had actually intended to exclude such legal expenses from coverage, it could have included such a provision in the policy.  As the Court must construe the policy strictly against the Insurer, It cannot look to infer Illinois Union's subjective intent to exclude such fees.

As a corollary to their argument that § (B)(7)(b) commands exclusion, Illinois Union asserts that because restitution is a "penalty imposed by law," it is barred from coverage under the policy and cannot be considered "other relief."  Accordingly, the underlying criminal action would not constitute a "claim" and recovery would be denied.  As noted above, under the traditional definition of "relief," the Court has no trouble in reaching the conclusion that restitution is a form of "other relief."  The question, therefore, is whether the undefined term "relief" should be viewed under its traditional definition or as limited by the exclusions of the policy.  By employing the latter view, the definition of "relief" would be more appropriately defined as "*recoverable* relief."  The Court declines to undertake this latter definition for several reasons.  First, by viewing the plain meaning of the term, and construing it in favor of the insured as is required by Florida law, the Court finds that "relief" includes criminal restitution.  There is no reason that a provision limiting the definition of "loss" should be construed to limit another term, "relief."  Second, even if the Court were to concede that the policy was ambiguous as to whether "relief" should be restricted by the exclusions, it must resolve

10

that ambiguity in favor of the Insured. *Anderson*, 756 So.2d at 34. Indeed, the proposed reading of the policy that Illinois Union would have the Court employ requires a confusing, circular analysis that simply cannot be required of the ordinary reader. Such confusion must be construed against the drafter, Illinois Union.

Next, Illinois Union looks to Exclusion (g), which states that Illinois Union is not liable to make any payment in connection with any Claim brought about by any dishonest, fraudulent, or criminal act. D & O § (C)(1)(g). That exclusion is limited to those situations where criminal conduct has been determined by a judgment or other final adjudication, however. No such final determination has been reached. Accordingly, unless or until such a final judgment of dishonest, fraudulent, or criminal conduct has been reached, Exclusion (g) is not applicable.[6]

Illinois Union also points to case law supporting its position that legal expenses and costs should not be covered by the policy. *See, e.g., Jaffe v. Cranford Ins. Co.*, 214 Cal. Rptr. 567 (Cal. App. 4th Dist. 1985). There, a California state court refused to require an insurance company to repay legal defense costs even after the policy-holder was found innocent of criminal charges based upon a criminal act exclusion in the policy. That decision does not command the same result here. In *Jaffe*, the court found the unambiguous language of the clearly written policy to exclude criminal defenses costs. To the contrary, the plain language of the D & O policy in this case does in fact include such legal expenses and fees. As the court decided in *Brown*, a strikingly similar case, even though fines and penalties for the alleged criminal acts are unrecoverable, the terms of the policy still

---

[6] If the Defendants are adjudged to be guilty of the underlying criminal action, Exclusion (g) would be activated. Because it excludes any payments *in connection* to a criminal act as determined by a final judgment, Illinois Union would be owed repayment of those legal fees and expenses that it expended in defense of the Insureds.

11

require payment of legal defense costs unless there is a final adjudication of criminal conduct. 787 F. Supp. at 1429 (holding that insurer must pay legal expenses for insured as incurred in defending himself in a criminal case).[7]

Therefore, because the legal fees and expenses incurred during the defense of the criminal charges are a Loss resulting from a Claim made against the Directors, Officers, and Company during the policy period for a wrongful act, Illinois Union has a legal duty to cover those costs. The policy states that the "Insurer shall pay Loss in the order in which Loss is incurred." D & O § (D)(5). Also, the Insurer "shall pay Costs, Charges and Expenses no more than once every 90 days." D & O § (D)(6). According to those terms, Illinois Union shall periodically pay for Defendants reasonable and necessary legal fees and expenses as incurred in the underlying criminal action.

Ironically, Illinois Union's duty to pay legal expenses in defense of the underlying criminal action notwithstanding, it is clear--and Defendants concede--that under no circumstances will Illinois Union be obligated to pay anything else. This is simply because if the Defendants are found not guilty of the crimes below, then there will be no additional loss. On the other hand, if they are found criminally liable, any potential fines or restitutionary relief would be excluded from recovery. "[T]axes, criminal or civil fines or penalties imposed by law" are expressly excluded from the definition of Loss. In Florida, restitution is considered a criminal sanction. *Kirby v. State*, 863 So.2d 238, 243 (Fla. 2003) (holding that a court may order criminal restitution notwithstanding a settlement agreement containing a release of liability); *see also* Fla. Stat. § 775.089 (defining restitution as a

---

[7] Illinois Union makes much of the fact that *Brown* dealt with both a criminal and a civil action against insureds. That fact was not dispositive and the lack of a civil claim in this matter does not change the effect of the provisions in the policy. *Brown*, 787 F. Supp. at 1429 (determining that the defense costs for both the civil and criminal actions are covered by insurance policy).

12

criminal penalty).  Certainly, any criminal fine would not be recoverable under the policy, either.  Thus, any penalty imposed by the criminal court would not be a recoverable loss under the policy, regardless of the ultimate outcome of the underlying action.

**D.     Prior Knowledge Exclusion**

Next, Illinois Union argues that it can deny coverage based upon the policy's prior knowledge exclusion.  D & O (C)(1)(m).  That exclusion states that, "Insurer shall not be liable to make any payment . . . in connection with any Claim based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any was involving, any Wrongful Act which any of the Insureds had knowledge of prior to the Continuity Date where such Insureds had reason to believe at the time that such known Wrongful Act could reasonably be expected to give rise to such Claim."  Thus, in order for the prior knowledge exclusion to apply, Illinois Union must show that the Defendants had knowledge of a wrongful act before the continuity date and that the Defendants could have reasonably expected such wrongful acts to give rise to the claim.  The continuity date is specified in the policy as November 13, 2000.  The earliest date of criminal conduct, according to the Second Superseding Information, were racketeering activities that ran from January 2000 to March  2003.[8] Second Superseding Information., Counts 1-2 (alleging unlawful conduct from January 2000 through March 2003).  In addition, the information alleges discrete criminal acts that took place in 2002 and 2003.  *Id.*, Count 14.  Under Florida law, where a complaint alleges facts that are partially within and

---

[8] Illinois Union contends that the criminal conduct began as early as 1999, citing to the affidavit of Mr. Robert Fielder, an investigator with the State's Attorney's Office for the Eleventh Judicial Circuit.  Illinois Union acknowledges, however, that the Court must look solely to the allegations in the complaint to determine whether there is a duty to defend or indemnify an Insured.  *Casualty Indemnity Exch. v. Small Fry, Inc.*, 709 F. Supp. 1144, 1145 (S.D. Fla. 1989).  Nonetheless, although the Court sees no reason to consider Mr. Fielder's affidavit, the facts asserted therein do not change its analysis.

partially outside the coverage of an insured's policy, the insurer is not only obligated to defend, but must defend the entire suit. *Sunshine Birds & Supplies, Inc. v. U.S. Fid. & Guar. Co.*, 696 So.2d 907, 910 (Fla. 3rd Dist. Ct. App. 1997) (citing *Grissom v. Commercial Union Ins. Co.*, 610 So.2d 1299, 1307 (Fla. 1st Dist. Ct. App. 1992)).

The Court finds that the prior knowledge exclusion is clear and unambiguous. *See Lawyers Professional Liability Ins. Co. v. Dolan, Fertig & Curtis*, 524 So.2d 677, 678 (Fla. 4th Dist. Ct. App. 1988). Indeed, if the information only alleged acts that took place before the continuity date, the clause would be enforced and coverage denied. However, Count 14 alleges misconduct that wholly takes place after the continuity date. Defendants cannot be alleged to have had prior knowledge of criminal conduct that had not yet occurred prior to the continuity date. Illinois Union asserts that it is incontrovertible that the acts alleged to have occurred after the continuity date "arose out of" the acts which occurred prior to the continuity date. The Court does not agree. There is no mention of a link to prior criminal acts in Count 14. *See* Second Superseding Information, Count 14 (charging Cliff Berry, Inc., Berry, and Smith with organized fraud from June 2002 through March 2003). Because at least some portion of the claim against Defendants is within the coverage of the policy, the entire suit must be covered.[9] As noted above, this does not include a duty to defend, but only a duty to indemnify the Defendants for their legal expenses and costs spent in defending against the underlying claim.

---

[9] It is unclear whether a criminal act, such as the conspiracy alleged in Count 1, that is alleged to have begun before the continuity date and then proceeded past it would fall under the prior knowledge exclusion. Because there is another count that squarely alleges conduct that completely took place after the continuity date, the Court does not decide that issue.

14

### E.    Public Policy Considerations

Illinois Union also contends that public policy considerations should guide the Court to exclude coverage.  It points to the "jurisprudential maxim that no person should be allowed to profit from his or her own wrong."  *Hrynkiw v. Allstate Floridian Ins. Co.*, 844 So.2d 739, 742 (Fla. 5th Dist. Ct. App. 2003).  Indeed, the Court would be deeply concerned if Illinois Union's insurance policy provided coverage for the Defendants' criminal acts.  That is not the holding of the Court today, however.  Recovery for criminal fines or restitution have been expressly denied.  Permitting payment of legal expenses and fees in defending against a determination of criminal liability does not implicate these same public policy concerns.  *See Brown*, 787 F. Supp. at 1434.  Such a finding would presume Defendants' guilt before trial and could deprive an innocent insured of its contracted-for defense costs.  Illinois Union has indicated that it did not intend to obligate itself to pay for criminal defense costs.  If that is Illinois Union's subjective intent, it must more clearly state it.  The Court cannot, however, attempt to enforce such intent in the face of contrary language the in the contract.  *See Steele v. Kinsey*, 801 So.2d 297, 300 (Fla. 1st Dist. Ct. App. 2001).

### IV.    Conclusions

For all of the foregoing reasons, having considered the parties' submissions and being duly advised in the premises, it is hereby

ORDERED that Illinois Union's claim for declaratory relief against Mitchell Ocegura is DISMISSED WITHOUT PREJUDICE for lack of standing;

Defendants' Motion for Partial Summary Judgment is GRANTED.  Illinois Union has the legal duty to periodically pay the costs, charges, and expenses of Cliff Berry, Inc., Cliff Berry II, and Jeffrey Smith as they are incurred in their defense against the criminal information;

Plaintiff's Motion for Final Summary Judgment is GRANTED IN PART and DENIED IN PART. Illinois Union has no legal duty to indemnify the Defendants for any judgment that is granted in the underlying criminal action.

DONE AND ORDERED in Chambers, Miami, Florida, this November 17, 2006.

_____
Paul C. Huck
United States District Judge

Copies furnished to:
Honorable Ted E. Bandstra
All Counsel of Record